GARY HARRE, CBN# 86938
3024 E. ANAHEIM ST.
LONG BEACH, CA 90804
TELEPHONE: (562) 200-4701
EMAIL: MNAPAUL1@GMAIL.COM

Attorney for Debtor
       Nguyen Hong

**FILED**

SEP - 7 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>NGUYEN HONG, an individual<br><br>SSN xxx-xx-3277 | Case No. 8:07-BK-14256-RK<br><br>CHAPTER 7<br><br>EX PARTE APPLICATION TO REOPENING BANKRUPTCY CASE<br><br>HON.: ROBERT KWAN<br><br>411 West Fourth Street<br>Santa Ana, CA 92701-4593 |

COMES NOW Movant Nguyen Hong, by and through his counsel, Gary Harre, hereby moves this Court to reopen Bankruptcy Case No. 8:07-BK-14256-RK (In Re Nguyen Hong) pursuant to 11 U.S.C.A. § 350, Federal Rule of Bankruptcy Procedure 5010 and Local Bankruptcy Rule 5010-1. This motion is made and based on the attached memorandum of points and authorities, including the attached exhibits, together with all papers and documents already on file in Case No. 8:07-BK-14256-RK, and any further argument this Court may require.

This motion is based upon this ex parte application, the attached Memorandum of Points and Authorities, as well as the pleadings and papers on file herewith, and upon such other oral and documentary evidence as may be presented at the hearing of this matter.

Movant Nguyen Hong filed this instance Chapter 7 as joint debtor with Xa Kien Nam on 12/12/2007. On April 8, 2008, the bankruptcy case was closed and discharge was entered.

On schedule A of the petition, Movant listed her primary residence located at 10572 Kern Ave, Garden Grove, CA and creditor holding secured claims of Option One Mortgage Corporation, a California Corporation (hereinafter "Option One"). Such secured claim should be listed as disputed. However, due to the oversight by previous attorney, it was not done. In fact, Movant discovered that Option One status as a California corporation was suspended and had no right and authority to conduct business or assigning mortgage under California Corporation Code. This fact is further supported by the orders of California Department of Corporation order In the Matter of the Accusation of THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA vs. OPTION ONE MORTGAGE CORPORATION, File No. 413 0869.

In September 2009, Deutsche Bank National Trust Company as trustee for HSI asset securitization corporation 2006-OPT2 mortgage pass-through certificates, series 2006-OPT2 (hereinafter "Deutsche Bank") claimed to be the owner of the promissory note that secured by the deed of trust. Despite repeated demands made by Movant upon Deutsche Bank to show that their claim of the promissory note actually has been perfected, Deutsche Bank refused to do so.

Simply stated, Movant is asking the bankruptcy court through adversary proceeding to determine if fraudulent transfer was committed on the bankruptcy court in a bankruptcy court proceeding.

## MEMORANDUM OF POINTS AND AUTHORITIES

Courts have found continuing "related to" jurisdiction even after the debtor emerges from bankruptcy. Bankruptcy jurisdiction may still obtain if there is sufficient connection to the bankruptcy. However, bankruptcy jurisdiction "must be confined with appropriate limits and does not extend indefinitely" after the closing of a case. Donaldson v. Bernstein, 104 F.3d 547, 553 (3rd Cir. 1997).

A primary goal of the Bankruptcy Code, to allow the honest but unfortunate" debtor to obtain a "fresh start" through relief from his debts is accomplished by the discharge. In re Krohn, 886 F.2d 123, 125 (6th Cir. 1989) (citing Local Loan Co. v. Hunt, 54 S. Ct. 695, 699 (1934)); see also Meyers v. Internal Revenue Serv. (In re Meyers), 196 F.3d 622, 624 (6th Cir. 1999); In re

Castle, 289 B.R. 882, 886 (Bankr. E.D. Tenn. 2003). In a Chapter 7 case, a debtor's assets are liquidated for the benefit of his or her creditors, and in return, the debtor's debts, or a portion thereof, are discharged. Krohn, 886 F.2d at 125. Although entry of a Chapter 7 debtor's discharge does not extinguish the debts, once the discharge has been entered, the debtor is no longer personally liable for any of the discharged debts. Castle, 289 B.R. at 886 (quoting Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 53 (5th Cir. 1993)); see also In re Gibson, 172 B.R. 47, 49 (Bankr. W.D. Ark. 1994).

The authority to reopen a closed bankruptcy case is derived from 11 U.S.C.A.§ 350(b), which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C.A. § 350(b). "[W]hether to reopen bankruptcy cases . . . [is within] the sound discretion of the bankruptcy judge[.]" Rosinski v. Boyd (In re Rosinski), 759 F.2d 539, 540-41 (6th Cir. 1985). Because there are no statutory criteria set forth defining "cause" for reopening a closed case, motions to reopen should be decided on a case by case basis, "consider[ing] the equities of each case with an eye toward the principles which underlie the Bankruptcy Code." In re Kapsin, 265 B.R. 778, 779-80 (Bankr. N.D. Ohio 2001). However, "[t]he Court will not reopen [a] case if doing so would be futile[.]" In re Phillips, 288 B.R. 585, 587 (Bankr. M.D. Ga. 2002); accord Chanute Prod. Credit Assoc. v. Schicke (In re Schicke), 290 B.R. 792, 798 (B.A.P. 10th Cir.2003) ("A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case.").

In this case, reopening to the bankruptcy case is necessary to determine Deutsche Bank standing and its authority under the deed of trust that secured the promissory note. Movant is seeking to invalidate the security instrument purportedly held by Deutsche Bank. This case does not involve a dispute simply collateral to the bankruptcy case. Rather, this action implicates the integrity of the bankruptcy process, as Deutsche Bank fraudulent asserted its status as secured creditor after the discharge. In this regard it has been held that "misconduct during the bankruptcy proceeding" often compels the court to allow the fraud to be redressed. See In re Emmer Bros. Co.,

52 B.R. 385, 394-95 (D.Minn.1985). Furthermore, it has been held that if there is a sufficient nexus, a bankruptcy court can exercise subject matter jurisdiction over a related state law matter by reopening a closed bankruptcy case. *See* In re Burch, 88 B.R. 686, 690 (Bkrtcy.E.D.Pa. 1988).

THEREFORE, Movant Nguyen Hong requests this Court reopen Bankruptcy Case No. **8:07-BK-14256-RK**, to allow Movant to amend her schedules and to file motion to invalidate the lien purportedly held by Deutsche Bank based on fraudulent transfer.

DATED this 7th day of September, 2010.

Respectfully Submitted;

GARY HARRE
Attorney for Movant, Nguyen Hong

# EXHIBIT 1

# California Secretary of State Debra Bowen

**Business Programs**

**Business Entities (BE)**

Online Services
 - Business Search
 - Disclosure Search
 - E-File Statements
 - Mail Processing Times

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Annual/Biennial Statements

Filing Tips

Information Requests
(certificates, copies &
 status reports)

Service of Process

FAQs

Contact Information

Resources
 - Business Resources
 - Tax Information
 - Starting A Business
 - International Business
   Relations Program

Customer Alert
(misleading business
solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, September 03, 2010. It is not a complete or certified record of the entity.

| | |
|---|---|
| | OPTION ONE MORTGAGE CORP. |
| | C1562192 |
| | 07/19/1989 |
| | SUSPENDED |
| | CALIFORNIA |
| | **3109 LOS FLORES A |
| | LYNWOOD CA 90262 |
| | ** RESIGNED ON 10/03/1990 |
| | * |
| | * |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**   **New Search**   **Printer Friendly**   **Back to Search Results**

**Privacy Statement** | **Free Document Readers**

Copyright © 2010   California Secretary of State

# EXHIBIT 2

# California Secretary of State Debra Bowen

**Business Programs**

**Business Entities (BE)**

Online Services
- **Business Search**
- **Disclosure Search**
- **E-File Statements**
- **Mail Processing Times**

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Annual/Biennial Statements

Filing Tips

Information Requests
(certificates, copies & status reports)

Service of Process

FAQs

Contact Information

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**
- **International Business Relations Program**

Customer Alert
(misleading business solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, September 03, 2010. It is not a complete or certified record of the entity.

|   |   |
|---|---|
|   | OPTION ONE MORTGAGE CAPITAL CORPORATION |
|   | C2935541 |
|   | 11/30/2006 |
|   | MERGED OUT |
|   | DELAWARE |
|   | 3 ADA |
|   | IRVINE CA 92618 |
|   | C T CORPORATION SYSTEM |
|   | 818 W 7TH ST |
|   | LOS ANGELES CA 90017 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**   **New Search**   **Printer Friendly**   **Back to Search Results**

**Privacy Statement** | **Free Document Readers**

Copyright © 2010   California Secretary of State

# EXHIBIT 3

Loan Number: [        ]   Servicing Number: 0018l5809-7   Date: 08/05/05

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

10572  KERN AVE,  GARDEN GROVE, CA 92843-5028
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S.   $476,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of   6.400%.  The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS   *** INTEREST ONLY NOTE ADDENDUM ATTACHED HERETO AND MADE PART HEREOF***
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  October 01 , 2005
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
September 01 , 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at   Option One Mortgage Corporation
P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S.   $2,538.67   This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
(D) Application of Payments
Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES   ***INTEREST ONLY NOTE ADDENDUM ATTACHED HERETO AND MADE PART HEREOF***
(A) Change Dates
The interest rate I will pay may change on the first day of  September 01 , 2007
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
FIVE AND 375/1000                                                  percentage point(s) ( 5.375% )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family
Page 1 of 3                                                                                      USN10021.wp (02-01-02)

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
Southland Title Company
By [signature]

EXHIBIT 1
14

Loan Number: |                Servicing Number:    001815809-7            Date:   08/05/05

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than   9.400%   or less than   6.400%  . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    12.400%   or less than    6.400%  .

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.  BORROWER'S RIGHT TO PREPAY
I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

If within    24 Months    from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

6.  LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7.  BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

(C) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

8.  GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

EXHIBIT 1
15

Loan Number:             Servicing Number:   001815809-7       Date:  08/05/05

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)                            _____(Seal)
HONG T. NGUYEN     -Borrower                                                          -Borrower

_____(Seal)                            _____(Seal)
                     -Borrower                                                      -Borrower

_____(Seal)                            _____(Seal)
                     -Borrower                                                      -Borrower

[Sign Original Only]

EXHIBIT
16